Case 4:23-cv-01012 Document 86 Filed on 09/24/24 in TXSD Page 1 of 12

United States District Court
Southern District of Texas
**ENTERED**
September 25, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| TONEY JONES a/k/a DEVONE CALDWELL, (Inmate # 2825110) §§§§§§§§§§§§§ | |
| *Plaintiff*, | |
| vs. | CIVIL ACTION NO. H-23-1012 |
| UNKNOWN JAIL DETENTION OFFICER, *et al.*, | |
| *Defendants*. | |

## MEMORANDUM OPINION AND ORDER

While he was detained in the Harris County Jail, plaintiff Toney Jones, a/k/a Devone Caldwell (SPN #02825110), filed a civil rights complaint under 42 U.S.C. § 1983, against three Harris County Jail detention officers. (Dkt. 1). Proceeding *pro se* and *in forma pauperis*, Jones alleged that the three officers used excessive force against him during an incident that occurred at the Jail on June 17, 2022. (*Id.*). After the screening required by 28 U.S.C. § 1915A, the Court ordered service of process on detention officers Julian Escalera, Hector Gonzalez, and Andrea Trevino. (Dkt. 22). Trevino answered the complaint, (Dkt. 64), and filed a motion for summary judgment, supported by authenticated video evidence and her own affidavit.[1] (Dkts.

---

[1]Defendants Escalera and Gonzalez also filed motions for summary judgment,

71, 72). Jones filed a timely response. (Dkts. 79, 81). Trevino filed a reply, (Dkt. 80), and Jones filed a surreply accompanied by an exhibit.[2] (Dkt. 82, 83). Having reviewed Trevino's motion, the response and replies, all matters of record, and the law, the Court grants Trevino's motion for summary judgment and dismisses Jones's action against her for the reasons explained below.

## I. BACKGROUND

Jones was booked into the Harris County Jail on June 13, 2022, on charges of aggravated assault, aggravated robbery, unlawful possession of a firearm, and possession of controlled substances. (Dkt. 11, p. 2). On June 17, 2022, Jones was in a cell the medical holding area, waiting to complete all of the intake screening procedures before he would be assigned to a more permanent cell. (*Id.* at 4).

Jones alleges that while in the medical holding cell, he and several other

---

supported by summary judgment evidence. (Dkts. 73, 74, 75. 76, 77, 78). Those motions will be addressed in a separate order.

[2]Generally, the Court does not permit a party to file a surreply because the moving party is entitled to file the last pleading. *See Gezu v. Charter Commc'ns*, 17 F.4th 547, 555-56 (5th Cir. 2021). "Surreplies, and any other filing that serves the purpose or has the effect of a surreply, are highly disfavored, as they usually are a strategic effort by the nonmovant to have the last word on a matter." *Lacher v. West*, 147 F. Supp. 2d 538, 539 (N.D. Tex. 2001). Therefore, the Court accepts such filings only "in exceptional or extraordinary circumstances." *Gezu*, 17 F.4th at 556 (quoting *Lacher*, 147 F. Supp. 2d at 539). In this case, Jones's surreply does not provide or rely on any facts or information that was not already before the Court. Therefore, while the Court will not strike the surreply, the Court notes that it did not rely on it in ruling on Trevino's motion.

inmates in the cell heard and saw several detention officers beating another inmate who was outside the cell. (*Id.* at 6). Jones and the other inmates began calling out from their cell, saying that they could see what the detention officers were doing and that it was wrong. (*Id.* at 6-7). In response, the officers came to the cell where Jones was, opened the door, and began beating Jones. (*Id.*). Jones believes he was selected because he was closest to the door and because the officers "wanted to teach me a lesson." (*Id.* at 6-7). Jones alleges that he suffered a right orbital fracture as a result of the beating. (*Id.*). He also alleges that the officers sprayed pepper spray in his eyes and cut him with something, which resulted in him needing stitches under his eye and on his arm. (*Id.*) After the assault, Jones was taken to Ben Taub hospital and treated for his injuries. (*Id.* at 7-8). He alleges that he continues to suffer from some loss of vision and pain in his right eye. (*Id.* at 8). Jones seeks both compensatory and punitive damages against the defendants. (Dkt. 1, p. 4). He also asks that each of the defendants be "prosecuted to the full extent of the law." (*Id.*).

In her motion for summary judgment, Trevino contends that she is entitled to summary judgment because undisputed video evidence of the incident shows that she did not use *any* force against Jones during the incident, much less excessive force. (Dkt. 71, pp. 10-12). In the alternative, she contends that her actions were reasonable under all of the circumstances. (*Id.* at 12-14).

Trevino filed video footage of the incident in support of her motion for summary judgment. (Dkt. 72). When the video starts, Jones appears to be asleep in a medical holding cell with a number of other prisoners. (*Id.* at 1:51:07). Jones is awakened by something outside the cell, and he gets up and walks toward the cell door. (*Id.*). Jones then stands at the cell door, banging on it and yelling. (*Id.* at 1:51:14-1:51:44). He then backs away from the door and returns to sit down on the bench where he had been sleeping. (*Id.* at 1:51:44).

A few seconds later, the cell door opens and two officers enter. (*Id.* at 1:51:51). Jones stands back up and angrily approaches the two officers. (*Id.* at 1:51:51-1:51:58). He then pulls off his shirt, assumes a traditional boxing stance, and appears to be encouraging the officers to fight.[3] (*Id.* at 1:51:58-1:52:02). Another inmate steps between Jones and the officers as if to diffuse the situation, but the officers order that inmate to back away. (*Id.* at 1:52:02-1:52:07). As the officers approach Jones, he continues to hold his hands in a boxing-style stance. (*Id.* at 1:52:07-1:52:15).

Then, Jones abruptly puts his hands down and starts to back up. (*Id.* at 1:52:17). Despite this, the two officers grab Jones, push him against the back wall

---

[3]The video does not contain audio, so the Court does not know what Jones was yelling. Likewise, the Court cannot determine what commands the officers may have been giving to Jones.

4

of the cell, push him to the ground, and punch him repeatedly in the head and neck. (*Id.* at 1:52:18-1:52:32). While the officers are punching Jones, he curls up in a ball on the floor with his arms around his head and neck as if trying to protect himself. (*Id.*). For the next thirty seconds, Jones does not appear to be struggling against the officers, although he remains curled up with his arms against his chest. (*Id.*). At some point, the officers deploy pepper spray on Jones, but it is not clear in the video exactly when this occurs.

Shortly thereafter, Trevino enters the cell. (*Id.* at 1:52:49). She does not hit or punch Jones, although the two other two officers knee him in the back and punch him several more times while Trevino is present. (*Id.* at 1:52:49-1:53:34). Trevino is able to grab one of Jones's arm and get handcuffs on him, and the other two officers then back away. (*Id.* at 1:53:34-1:54:01). Trevino helps Jones stand up, and she guides him out of the cell. (*Id.*). Once they are out of the cell and in the hallway, Trevino puts ankle cuffs on Jones without incident. (*Id.* at 1:54:35). Trevino argues that this evidence clearly demonstrates that she did not use any force on Jones on the day in question. (Dkt. 71-3).

In his response to Trevino's motion, Jones admits that he does not remember Trevino punching him. (Dkt. 79, p. 2). However, he notes that he also suffered a severe laceration to his arm that required stitches, and he does not know whether that

5

was caused by Trevino. (*Id.*). In her reply, Trevino contends that Jones's unsupported allegations concerning who may have caused the cut on his arm are insufficient to avoid summary judgment. (Dkt. 80).

## II.  LEGAL STANDARDS

### A.  Actions Under 42 U.S.C. § 1983

Jones sues Trevino under 42 U.S.C. § 1983. "Section 1983 does not create any substantive rights, but instead was designed to provide a remedy for violations of statutory and constitutional rights." *Lafleur v. Texas Dep't of Health*, 126 F.3d 758, 759 (5th Cir. 1997) (per curiam); *see also Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). To state a valid claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *See West v. Atkins,* 487 U.S. 42, 48 (1988); *Gomez v Galman*, 18 F.4th 769, 775 (5th Cir. 2021) (per curiam). The dispute in this case focuses on the first element: whether Trevino violated Jones's constitutional rights.

### B.  The Summary-Judgment Standard

Trevino has filed a motion for summary judgment. "Summary judgment is appropriate only if 'the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.'" *Tolan v.*

6

*Cotton,* 572 U.S. 650, 656-57 (2014) (per curiam) (quoting FED. R. CIV. P. 56(a)). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.,* 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-25 (1986)). "A fact is material if its resolution could affect the outcome of the action." *Dyer v. Houston,* 964 F.3d 374, 379 (5th Cir. 2020) (quoting *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 134 (5th Cir. 2010)). "A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Westfall v. Luna,* 903 F.3d 534, 546 (5th Cir. 2018) (per curiam) (cleaned up).

When considering a motion for summary judgment, the Court must view all evidence and draw all inferences "in the light most favorable to the [nonmoving] party." *Tolan,* 572 U.S. at 657 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)); *see also Dyer,* 964 F.3d at 380. However, if record evidence clearly contradicts a party's version of events, the Court "should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Waddleton v. Rodriguez,* 750 F. App'x 248, 253-54 (5th Cir. 2018) (per curiam) (quoting *Scott v. Harris,* 550 U.S. 372, 380 (2007)). This is particularly true when there is video evidence. When video evidence exists, the Court will "view[] the facts in the light

7

depicted by the videotape." *Salazar v. Molina*, 37 F.4th 278, 280 (5th Cir. 2022) (quoting *Scott*, 550 U.S. at 381); *see also Betts v. Brennan*, 22 F.4th 577, 582 (5th Cir. 2022) ("[W]e assign greater weight, even at the summary judgment stage, to the video recording taken at the scene.") (cleaned up); *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011) ("A court . . . need not rely on the plaintiff's description of the facts where the record discredits that description but should instead consider the facts in the light depicted by the videotape.") (cleaned up).

When both parties have submitted evidence that tends to show conflicting facts, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995). However, the Court will not consider the nonmoving party's conclusory allegations and unsubstantiated assertions as evidence. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). After viewing the offered evidence in the light most favorable to the nonmoving party, summary judgment may be granted only if no genuine disputes of fact exist and no reasonable jury could return a verdict for the nonmoving party. *See, e.g., Rubinstein v. Adm'rs of the Tulane Educ. Fund*, 218 F.3d 392, 399 (5th Cir. 2000).

C. ***Pro Se* Pleadings**

Because Jones is proceeding *pro se*, the Court construes his filings liberally,

8

subjecting them to "less stringent standards than formal pleadings drafted by lawyers[.]" *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). But even under this lenient standard, *pro se* litigants must still "abide by the rules that govern the federal courts." *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014) (quoting *Frazier v. Wells Fargo Bank, N.A.*, 541 F. App'x 419, 421 (5th Cir. 2013) (per curiam)). "*Pro se* litigants must properly plead sufficient facts that, when liberally construed, state a plausible claim to relief, serve defendants, obey discovery orders, present summary judgment evidence, file a notice of appeal, and brief arguments on appeal." *Id.* (footnotes omitted).

## III. DISCUSSION

Jones has sued Trevino based on a claim that she used excessive force against him during the incident in the medical holding cell. Trevino contends that the undisputed summary judgment evidence shows that she did not use excessive force and that she is entitled to qualified immunity. The Court addresses these arguments in turn.

### A. Excessive Force Claim

Pretrial detainees, like Jones, have a due process right under the Fourteenth Amendment to be free "from the use of excessive force that amounts to punishment." *Kingsley v. Hendrickson*, 576 U.S. 389, 397, 400 (2015). Punishment "can consist

of actions taken with an 'expressed intent to punish.'" *Id.* at 398 (quoting *Bell v. Wolfish*, 441 U.S. 520, 538 (1979)). But even "in the absence of an expressed intent to punish, a pretrial detainee can nevertheless prevail by showing that the actions are not 'rationally related to a legitimate nonpunitive governmental purpose' or that the actions 'appear excessive in relation to that purpose.'" *Id.* (quoting *Bell*, 441 U.S. at 561). To meet this standard, the pretrial detainee must show that "the force purposely and knowingly used against him was objectively unreasonable." *Id.* at 397.

In this case, the undisputed video evidence does not show that Trevino used any force against Jones during the incident involved in this case, much less excessive force. This evidence alone negates Jones's excessive force claim against Trevino. *See, e.g., Trevino v. Price*, No. 22-50132, 2023 WL 7870599, at *1 (5th Cir. Nov. 15, 2023) (per curiam) (affirming entry of summary judgment in favor of officer when the undisputed summary judgment evidence showed that the officer did not handcuff the plaintiff, much less use excessive force in doing so). Jones admits that he does not remember Trevino hitting him, and his unsupported speculation that she could have been the source of the cut on his arm is insufficient to carry his burden to show that disputed issues of fact exist material to the question of whether Trevino used excessive force. Because there is no evidence that Trevino used excessive force

against Jones, she is entitled to summary judgment in her favor. Jones's claims against her will be dismissed with prejudice.

### B. Qualified Immunity

Trevino also moves for summary judgment on the basis of qualified immunity. "Qualified immunity protects officers from suit unless their conduct violates a clearly established right." *Austin v. City of Pasadena, Tex.*, 74 F.4th 312, 322 (5th Cir. 2023) (quoting *Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003)); *see also Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). The test for qualified immunity involves two steps: "first we ask whether the officer's alleged conduct has violated a federal right; . . . second we ask whether the right in question was 'clearly established' at the time of the alleged violation, such that the officer was on notice of the unlawfulness of his or her conduct." *Solis v. Serrett*, 31 F.4th 975, 981 (5th Cir. 2022) (quoting *Cole v. Carson*, 935 F.3d 444, 451 (5th Cir. 2019) (en banc)). If the evidence does not show that a constitutional violation occurred, the Court need not consider whether the law is clearly established. *See Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008); *Freeman v. Gore*, 483 F.3d 404, 410-11 (5th Cir. 2007).

In this case, as discussed above, the undisputed summary judgment evidence does not show that Trevino violated Jones's constitutional rights by using excessive

force against him. She is therefore entitled to qualified immunity, and the action as to Trevino will be dismissed.

## IV. **CONCLUSION**

Based on the foregoing, the Court **ORDERS** as follows:

1. The Motion for Summary Judgment filed by defendant Andrea Trevino, (Dkt. 71), is **GRANTED**.

2. Jones's claims against Trevino are **DISMISSED with prejudice**.

3. This action remains pending as to Jones's claims against defendants Escalera and Gonzalez.

4. The Court will consider Jones's motion for the appointment of counsel, (Dkt. 84), in connection with its ruling on the motions for summary judgment filed by Escalera and Gonzalez.

The Clerk will provide a copy of this Order to the parties.

SIGNED at Houston, Texas, on _____9/24/24_____, 2024.

DAVID HITTNER
UNITED STATES DISTRICT JUDGE